IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-00850-RM-MJW

JOSHUA LAMONT SUTTON,

Plaintiff,

v.

MR. AURITI,

Defendants.

---

**DEFENDANT AURITI'S RESPONSES TO PLAINTIFF'S DISCOVERY**

---

Defendant Paul Auriti hereby submits the following responses to Plaintiff's First Set of Discovery (Requests).

**GENERAL OBJECTIONS AND PRELIMINARY STATEMENT**

The Defendant objects to the Requests to the extent any Request seeks information protected from disclosure by the attorney-client privilege, work-product immunity doctrine, and/or any other privilege or protection. These responses are based upon information currently available to Defendant. Defendant reserves the right to supplement or modify his responses should additional or different information become available.

These Requests have been copied exactly as written by Plaintiff. Typographical and/or grammatical errors have not been corrected.

EXHIBIT
A

## REQUESTS

**REQUEST NO. 1:**

A. Isn't it true that you were hired for employment by the Colorado Department of Corrections (CDOC)?

B. Please explain being hired.

C. Please produce all of your Employment documentation from the CDOC.

**RESPONSE:**

**A. Admit. I was hired by the Colorado Department of Corrections (CDOC).**

**B. I was hired by the CDOC on October 1, 2005 as a Corrections Officer I.**

**C. OBJECTION: This request seeks personnel information to which Auriti has a constitutional right of confidentiality, pursuant to *Martinelli v. District Court*, 612 P.2d 1083, 1091-93 (Colo. 1980) and *In re District Court*, 256 P.3d 687, 690-92 (Colo. 2011).**

**REQUEST NO. 2:**

A. Isn't it true that you were assigned by the Colorado Department of Corrections to work at the Residential Treatment Program (RTP) at Centennial Correctional Facility (CCF) (a prison)?

B. Please explain all details of your being assigned to the RTP at CCF.

C. Please produce all of your assignment documentation from the RTP, CCF, and CDOC.

**RESPONSE:**

**A. Admit in part. I was already assigned to CCF when the RTP began at CCF.**

**B. I was already assigned to CCF when the RTP began at CCF. Since the RTP began, I have worked in housing, which includes running the housing unit, maintaining security and custody, and facilitating mental health in the RTP (restraining offenders, taking offenders to appointments and group therapy, providing food, and picking up laundry).**

**C. Please *see* PDQs for Mr. Auriti from 2008 to 2015, produced as CDOC/Sutton/15cv850-00001 through 00078.**

**REQUEST NO. 3:**

A. Isn't it true that the RTP at CCF is were person(s) convicted of a crime initially diagnosed, showed many additional behavioral problems within DOC, and diagnosed with having a serious mental illness are imprisoned to receive mental health treatment, so they can get better over time?

B. Please explain all details of the RTP at CCF within the DOC.

C. Please produce all the RTP at CCF conceptual documentations from RTP, CCF and CDOC.

**RESPONSE:**

**A. OBJECTION: This request is vague and it is difficult to provide a comprehensive response since each individual in the RTP is assigned to the RTP due to a unique set of varying and complex factors. In addition, Defendant Auriti is not a mental health provider and cannot opine about mental illnesses of CDOC offenders.**

**Subject to this objection, Plaintiff is referred to Administrative Regulation 650-04, Residential Treatment Programs for Offenders with Mental Illness and Intellectual and Developmental Disabilities and corresponding CCF Implementation Adjustment for 650-04.**

**B. OBJECTION: This request is vague, overly broad, and unduly burdensome, and requests information that is not relevant to the claims and defenses in this case. Further, the request is not proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1). Specifically, the request asks for "all details of the RTP," which encompasses a vast amount of information. In addition, Defendant Auriti is not a mental health provider, and cannot provide details concerning mental illnesses of CDOC offenders.**

**Subject to this objection, admit in part. Plaintiff is referred to Administrative Regulation (AR) 650-04, Residential Treatment Programs for Offenders with Mental Illness and Intellectual and Developmental Disabilities dated from April 1, 2014 to October 15, 2016, and corresponding CCF Implementation Adjustment (IA) for 650-04 dated August 26, 2014 to June 1, 2017, produced as CDOC/Sutton/15cv850-00079 through 00243.**

**C. Please *see* AR 650-04, Residential Treatment Programs for Offenders with Mental Illness and Intellectual and Developmental Disabilities dated from April 1, 2014 to October 15, 2016, and corresponding CCF IA for 650-04 dated August 26, 2014 to June 1, 2017, produced as CDOC/Sutton/15cv850-00079 through 00243.**

**REQUEST NO. 4:**

A. Isn't it true that I, Joshua Sutton CDOC #96416 and Richard White CDOC # 124403 were convicted of crimes sentenced to DOC, showed additional behavior problems within CDOC, diagnosed with having serious mental illness were imprisoned in the RTP at CCF, so I and he would receive mental health treatment and over time get better?

B. Please explain all details of my and White's imprisonment in the RTP and CCF within CDOC.

C. Please produce all of the Sutton and White's crimes, convictions, sentencing, additional behavior problems with the CDOC, subsequent diagnostics, treatments, initial diagnostics and treatment and progress from the RTP, CCF, and CDOC.

**RESPONSE:**

**A. OBJECTION: This request is vague and requires Defendant Auriti to draw conclusions based on a vast amount of information. Defendant Auriti is not a mental health provider, nor can he provide information concerning mental illnesses or mental health treatment of CDOC offenders.**

**Subject to this objection, admit in part. I reviewed pertinent CDOC records for both White and Sutton. White's CDOC records show that he received felony convictions and was sentenced to the CDOC. White's**

**COPD records only show a small number of COPD convictions (two) since his incarceration in the CDOC. White's CDOC chrons do not reflect that he had behavioral problems, which would be reflected by negative chron entries, within the CDOC. Sutton's CDOC records show that he received felony convictions and was sentenced to the CDOC. Sutton's COPD records show numerous COPD convictions (more than 20) since his incarceration in the CDOC. Sutton has also obtained multiple negative chron entries showing behavioral problems.**

**B. OBJECTION: This request is vague, overly broad, and unduly burdensome, and requests information that is not relevant to the claims and defenses in this case. Further, the request is not proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1). Specifically, the request asks for "all details" concerning Sutton and White's imprisonment in the RTP. It is unknown what is meant by "all details." In addition, Defendant Auriti is not a mental health provider, nor can he provide information concerning mental illnesses or mental health treatment of CDOC offenders.**

**Subject to this objection, the details of the RTP program are described above in the responses to Request No. 3. The details that I recall concerning the incident with the map drawn by offender White are described below in the responses to Request Nos. 6-9.**

**C. OBJECTION: This request is vague, overly broad, and unduly burdensome, and requests information that is not relevant to the claims and defenses in this case. The request is not proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1). Details concerning mental health treatment and diagnostics are not relevant to this case. Further, the request seeks confidential documents of offender White protected by both HIPPA and section 13-90-107(1)(d) and (g), C.R.S. from disclosure to another offender. Such disclosure of these records could also subject White to unwarranted harassment by providing such personal and intimate details of his medical conditions, concerns, and treatment to other offenders. This could compromise security and create a volatile prison environment. Additionally, disclosure of these records would undermine the confidence of inmates in the CDOC to keep offenders' medical records private.**

**Defendant also objects to this request to the extent it seeks the disclosure of confidential security intelligence and information concerning another offender's criminal history and convictions. This information is not disseminated amongst CDOC offenders. Finally,**

**Defendants specifically object to producing Plaintiff's Adult Substance Use Surveys and Bio-Psychosocial Assessments which are contained in his CDOC mental health file. These documents are considered by CDOC clinical services to be "raw data," which is not provided to CDOC offenders because it reveals the manner in which offenders are scored in these mental health evaluations. Disclosure of this information could negatively affect an offender's treatment and progress if they know and could therefore manipulate the outcome of the evaluations.**

**Subject to this objection, *see* Sutton's medical records, produced as CDOC/Sutton/15cv850-00244 through 00301; Sutton's mental health records, produced as CDOC/Sutton/15cv850-0000302 through 00731; Sutton's Progression Notes, produced as CDOC/Sutton/15cv850-00846; Sutton's Grievances, produced as CDOC/Sutton/15cv850-00975 through 00986; Sutton's Chronological entries, produced as CDOC/Sutton/15cv850-00732 through 00740; COPD documents and queries, produced as CDOC/Sutton/15cv850-00741 through 00845; and Sutton's Incident reports, produced as CDOC/Sutton/15cv850-00847 through 0974.**

**Also *see* for White, White's disciplinaries list produced as CDOC/Sutton/15cv850-00987; White's Incident Reports produced as CDOC/Sutton/15cv850-00988 through 01016; White's Chronological entries produced as CDOC/Sutton/15cv850-01017 through 01039; and White's Progression Notes produced as CDOC/Sutton/15cv850-01040.**

**REQUEST NO. 5:**

A. Isn't it true that I and White were imprisoned and receiving treatment in the same housing area of the RTP at CCF?

B. Please explain all details of my and White's housing in the RTP at CCF?

C. Please produce all of the Sutton and White housing documents from RTP, CCF and CDOC.

**RESPONSE:**

**A. OBJECTION: If this request seeks information regarding mental health treatment, Defendant Auriti is not a mental health provider, nor can he provide information concerning mental illnesses or mental health treatment of CDOC offenders.**

**Subject to this objection, admit. CDOC records show that Sutton and White were in the same housing area of the RTP in 2015.**

**B. OBJECTION: This request is vague, overly broad, and unduly burdensome, and requests information that is not relevant to the claims and defenses in this case. Further, the request is not proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1). Specifically, the request asks for "all details" regarding housing, which encompasses a vast amount of information.**

**Subject to this objection, CDOC records show that Sutton and White were housed together in the RTP in 2015. The details of the RTP program are described above in the responses to Request No. 3. The details that I recall concerning the incident with the map drawn by offender White are described below in the responses to Request Nos. 6-9.**

**C. Please *see* Sutton's Offender Profile and movement file produced as CDOC/Sutton/15cv850-001041 through 01051; and White's Offender Profile and movement file produced as CDOC/Sutton/15cv850-001052 through 01073-01053; and E-Control Pass on Log produced as CDOC/Sutton/15cv850-001054 through 01065.**

**REQUEST NO. 6:**

A. Isn't it true that I reported to you that White had drawn a map showing the locations of dead human body(s)?

B. Please explain all details of my report to you?

C. Please produce all documented reports I made to you From RTP, CCF, and CDOC.

**RESPONSE:**

**A. Admit, Sutton submitted a kite with the information.**

**B. Sutton submitted a kite on September 17, 2015 stating that inmate White had given him a map containing the location of five bodies. The kite further stated that the map was located on his desk. I also recall speaking to Sutton about the map, but do not recall whether I retrieved the map from Sutton's desk, or directly from Sutton.**

**C. Please *see* OIG Investigation File produced as CDOC/Sutton/15cv850-001066 through 01079.**

**REQUEST NO. 7:**

A. Isn't it true that you responded by doing nothing about the report I made to you?

B. Please explain all details of your response to my report?

C. Please produce all documented responses by you and anyone else from RTP, CCF, and CDOC.

**RESPONSE:**

**A. Deny.**

**B. Once the kite was submitted and I obtained the map, I informed my supervisor, Lt. Darrin Russell about the map. Lt. Russell did not have me write an incident report regarding the map, and advised that it was to remain confidential. It is my understanding that, after Lt. Russell received the map, he then reported it to the Shift Commander who, at that time was Cpt. Sam Spangler. Based on my review of CDOC records, it is my understanding that Cpt. Spangler then advised an investigator from the CDOC's Office of Inspector General, Richard Wren about the map, who then turned the investigation over to the Aurora Police Department.**

**C. Please *see* OIG Investigation File produced as CDOC/Sutton/15cv850-001066 through 01079.**

**REQUEST NO. 8:**

A. Isn't it true you told White about my report to you?

B. Please explain all details of what you told White?

C. Please produce all documentation on what you told White from RTP, CCF, and CDOC.

**RESPONSE:**

**A. Deny.**

**B. I did not tell offender White or any other offender anything about the kite, the information in the kite, or the map. I kept all of the information contained in your kite and in the map confidential and did not discuss the situation with anyone other than my supervisor, Lt. Russell.**

**C. Because I did not tell White anything about the kite, about the kite, the information in the kite, or the map, there are no documents to produce.**

**REQUEST NO. 9:**

A. Isn't it true you that you made no attempts to keep me safe?

B. Please explain all attempts you made to keep me safe?

C. Please produce all documentation to keep me safe from on what you told White from RTP, CCF, and CDOC.

**RESPONSE:**

**A. Deny.**

**B. I maintained confidentiality of the information contained Sutton's kite and in the maps. By performing my prescribed job duties, and turning over the information to my supervisor, I believed I was keeping offender Sutton safe.**

**C. Because I did not tell White anything about the kite, about the kite, the information in the kite, or the map, there are no documents to produce.**

Further Affiant Sayeth Naught.

PAUL AURITI

Subscribed and sworn to before me in the County of Fremont, State of Colorado, this 24th day of August, 2017.

CANDACE M. LICATA
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20164020497
MY COMMISSION EXPIRES MAY 31, 2020

NOTARY PUBLIC

My Commission expires: May 31, 2020

As to Objections:

CYNTHIA H. COFFMAN
Attorney General

*s/ Jennifer S. Huss*
JENNIFER S. HUSS
Assistant Attorney General
Civil Litigation and Employment Law Section

Ralph L. Carr Colorado Judicial Center
1300 Broadway, 10th Floor
Denver, CO 80203
Telephone: (720) 508-6599
Facsimile: (720) 508-6032
E-mail: jennifer.huss@coag.gov
Attorneys for Defendants

**CERTIFICATE OF SERVICE**

This to certify that I have duly served the foregoing upon all parties herein electronically via CM/ECF on this 24th day of August 2017, addressed as follows:

Joshua Sutton, #96416
Arrowhead Correctional Center
P.O. Box 300
Canon City, CO 81215
*Plaintiff pro se*

*Courtesy copies:*
Adrienne Jacobson, CDOC

*s/ Darlene S. Hill*
Darlene S. Hill